IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEBRASKA

| UNITED STATES OF AMERICA, | ) | |
| --- | --- | --- |
| | ) | 8:05CR186 |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | |
| | ) | MEMORANDUM AND ORDER |
| WILLIAM HANSEN, | ) | |
| | ) | |
| Defendants. | ) | |
| | ) | |

This matter is before the court on defendant William Hansen's objection, Filing No. 28, to the Report and Recommendation ("R&R") of the United States Magistrate Judge ("Magistrate") (Filing No. 27), regarding Hansen's motion to suppress (Filing No. 20). Hansen is charged with one count of conspiracy to distribute and possess with intent to distribute more than 500 grams of methamphetamine and one count of possession with intent to distribute methamphetamine in violation of 21 U.S.C. §§ 846 and 841(a)(1) and (b)(1). Hansen seeks suppression of evidence found in the search of his vehicle on November 20, 2004, and of statements made to the arresting officer both before and after being advised of his rights under *Miranda v. Arizona*, 384 U.S. 436 (1966), on that date. *See* Filing No. 20.

The Magistrate recommends that the motion be granted in part and denied in part. Filing No. 27, R&R at 19-20. He recommends suppression of the statements Hansen made before he was advised of *Miranda* rights, but denial of the motion in all other respects. The Magistrate's conclusion is based in part on the finding that there was no showing that the officer deliberately attempted to evade *Miranda*. *Id.* at 12. Defendant Hansen objects to the Magistrate's finding that the post-*Miranda* statements are admissible.

An evidentiary hearing was held before the Magistrate on June 2, 2005. Filing No. 25, Minutes; Filing No. 26, Transcript of Hearing ("Hr'g Tr."). Under 28 U.S.C. § 636(b)(1)(C), the court has conducted a de novo review of those portions of the report or recommendations to which defendant Hansen objects. The court has reviewed the record, including the transcript of the hearing and a videotape of the traffic stop at issue. *See* Filing No. 26, Hr'g Tr., Hearing Exhibit ("Hr'g Ex.") 1. For the reasons set forth below, the court finds Hansen's objection to the Magistrate's recommendation that this court deny Hansen's post-*Miranda* statements should be sustained and Hansen's motion to suppress those statements should be granted.

The court generally accepts the Magistrate's factual findings and they will be repeated only as necessary to this court's analysis. Significantly, the record shows that Hansen had been arrested on two outstanding warrants at the time of the initial questioning. Hr'g Tr. at 10. He had been handcuffed and placed in the front passenger seat of the patrol car, where he remained for the duration of the traffic stop which lasted almost two hours. *Id.* at 10, 28. The videotape shows Hansen was stopped at 10:40 p.m., arrested and handcuffed approximately fifteen minutes later, and was not Mirandized until 11:57 p.m. *See* Hr'g Ex. 1. He was transported to the police station at 12:25. Hr'g Tr. at 28.

The arresting officer, Sgt. Buck Boje, was accompanied by Trooper Jones, who searched Hansen's vehicle and reported to Sergeant Boje that a needle syringe had been found on the floor of the truck. *Id.* at 16. Sergeant Boje asked defendant Hansen if he had a medical condition, such as diabetes, that would make it necessary to have a syringe in his vehicle. *Id.* The defendant responded that he did not, and that he did not know why the needle and syringe would be there. *Id.* Trooper Jones continued to search the truck

2

and found a plastic baggie containing a white crystalline substance. *Id*. at 17. Sergeant Boje showed the baggie to the defendant and asked if the substance was "ice" or methamphetamine. *Id.* The defendant answered that it was and admitted that he used methamphetamine. *Id.* at 17, 40-41. Sergeant Boje continued to engage defendant Hansen intermittently in general conversation, including asking him whether there were other syringes or contraband and whether there was anything that had been stolen in the pickup truck, for almost an hour after the syringe was found. *Id.* at 40-42. After calling for additional backup and field testing the substance, Sergeant Boje read Hansen his *Miranda* rights at approximately 11:55 p.m. *Id.* at 37, 52-53. Sergeant Boje also asked Hansen if he would be willing to waive his *Miranda* rights and to continue to speak to Boje. *Id.* at 22, Hr'g Ex. 2. After defendant agreed to speak, Sergeant Boje asked defendant Hansen a number of questions about the methamphetamine, including where he had purchased it, what he was doing with it, when he last purchased methamphetamine, and whether he was cooking it. Hr'g Tr. at 43. The defendant denied manufacturing methamphetamine, but said he knew of some people who did and was willing to provide information on them. *Id.* at 45-46.

The Magistrate recommended, and this court agrees, that Hansen's statements prior to being read his *Miranda* rights should be suppressed because Hansen was clearly in custody and was subject to a custodial interrogation without the warnings required by Miranda. Filing No. 27, R&R at 9-10. A *Miranda* warning must precede any custodial interrogation. *See United States v. Chamberlain*, 163 F.3d 499, 502 (8th Cir. 1999). Interrogation in the *Miranda* context refers to express questioning and to words or conduct that officers should know is "reasonably likely to elicit an incriminating response from the

3

suspect." *Rhode Island v. Innis*, 446 U.S. 291, 301 (1980); *see also United States v. Briones*, 390 F.3d 610, 612 (8th Cir. 2004). Once a custodial relationship is established, questioning assumes a presumptively coercive character. *See Miranda*, 384 U.S. at 467. The record shows that no *Miranda* warning was given until after the arresting officer asked him several questions reasonably likely to elicit an incriminating response and Hansen made several incriminating admissions.

The admissibility of statements made after belated *Miranda* warnings during continuing interrogations is governed by *Missouri v. Seibert*, 542 U.S. 600, —, 124 S. Ct. 2601, 2607-12 (2004) (plurality opinion) (holding that *Miranda* warnings given mid-interrogation, after defendant gave unwarned confession, were ineffective, and thus confession repeated after warnings were given was inadmissible at trial), and *Oregon v. Elstad*, 470 U.S. 298, 309 (1985) (holding that an unwarned first confession or statement will not always compromise the voluntariness of a subsequent confession). Under *Seibert*, the controlling question in a case involving a two-stage interrogation is whether "a reasonable person in the suspect's shoes" would have understood the *Miranda* warnings to convey a message that the suspect retained a genuine choice about continuing to talk. *Id.*, 542 U.S. at —, 124 S. Ct. at 2612. In the Eighth Circuit, courts apply the multi-factor test derived from *Seibert*, 542 U.S. at —, 124 S. Ct. at 2612, in order to determine whether *Miranda* warnings delivered between two interrogation sessions are sufficient to fully inform a suspect of his *Miranda* rights. *United States v. Fellers*, 397 F.3d 1090, 1098 (8th Cir. 2005), *cert. denied*, 2005 LEXIS 7285 (Oct. 11, 2005); *Briones*, 390 F.3d at 613-14 & n.3; *United States v. Aguilar*, 384 F.3d 520, 524-25 (8th Cir. 2004). Courts consider: (1) the extent of the first round of interrogation; (2) the extent to which the first and second

rounds of interrogation overlap; (3) the timing and setting of both questioning sessions, including whether a continuity of police personnel existed; and (4) the extent to which the interrogator's questions treated the second round as continuous with the first. *Aguilar,* 384 F.3d at 524.

As noted, *Seibert* is a plurality opinion. When no single rationale has the assent of five justices, the holding of the Court is the position of the justices who concurred in the judgment on the narrowest grounds. *United States v. Black Bear*, 422 F.3d 658, 664 (8th Cir. 2005). Justice Kennedy relied on grounds narrower than those of the plurality.[1] *Id., United States v. Briones*, 390 F.3d at 613 (stating that the key to *Seibert* is Justice Kennedy's reliance on a determination of whether the police officer's technique was a "designed," "deliberate," "intentional," or "calculated" circumvention of *Miranda*). Under Justice Kennedy's approach, whenever an interrogator uses a tactic that is deliberately designed to circumvent *Miranda,* the statement must be suppressed. *Seibert,* 542 U.S. at —, 124 S. Ct. at 2616 (Kennedy, J., concurring); *Aguilar*, 384 F.3d at 525. That is not to say, however, that any incriminating statement obtained in the absence of a deliberate intent to violate *Miranda* will be admissible. *See United States v. Terry*, 400 F.3d 575, 582 (8th Cir. 2005) (factually distinguishing *Seibert* based upon lack of evidence of threatening or coercive tactics and failure to show that first statement was involuntary). Under Justice Kennedy's approach, the *Oregon v. Elstad* analysis must still be performed. *See Seibert*, 542 U.S. at —, 124 S. Ct. at 2616 (Kennedy, J., concurring); *Briones*, 390 F.3d at 614.

---

[1]Justice Kennedy wrote a concurring opinion that advocates a focus on the subjective intent of the police in an effort to determine whether a two-stage interrogation was intentionally used to undermine the efficacy of the *Miranda* warnings. *Id.* at —-, 124 S. Ct. at 2615-16 (Kennedy, J., concurring in judgment). In Justice Kennedy's view, absent that intent, the principles of *Elstad* control the outcome. *See Seibert*, — U.S. at —, 124 S. Ct. at 2616.

5

*Elstad* instructs that "absent deliberately coercive or improper tactics in obtaining the initial statement, the mere fact that a suspect has made an unwarned admission does not warrant a presumption of compulsion" with respect to any subsequent postwarning statement. *Elstad*, 470 U.S. at 314. Though *Miranda* requires that an unwarned admission must be suppressed, the admissibility of any subsequent statement turns on whether it was knowingly and voluntarily made. *Id.* at 309. Thus, statements obtained in violation of *Miranda*, although they must be suppressed as presumptively coercive, may be found to have been voluntary in fact. *Id.* at 307. If the unwarned statement is found to be voluntary, then a subsequent warned confession may be admissible as long as the prior statement was not the result of "deliberately coercive or improper tactics." *Id.* at 314. "The relevant inquiry is whether, in fact, the second statement was also voluntarily made." *Id.* at 318. The government has the burden of proving by a preponderance of the evidence that, under the particular facts and circumstances of the case, a waiver of *Miranda* rights is an intentional, voluntary, knowing, and intelligent relinquishment or abandonment of a known right or privilege. *Missouri v. Seibert*, 542 U.S. at —, 124 S. Ct. at 2607 n.1 (2004) (plurality opinion); *Black Bear,* 422 F.3d at 663.

Having found that Hansen was in custody and *Miranda* was violated, the appropriate inquiry is whether the first statement, unlawfully obtained in violation of *Miranda*, taints the later statement. *Elstad*, 470 U.S. at 309. *Compare United States v. Robinson*, 20 F.3d 320, 322 (8th Cir. 1994) (finding a technical *Miranda* violation, that is, a simple failure to administer the warning "unaccompanied by actual coercion or other circumstances calculated to undermine the suspect's ability to exercise his free will" will not generally "so taint the investigatory process that a subsequent voluntary and informed waiver" would be

6

ineffective), with United States v. Carter, 884 F.2d 368, 373 (8th Cir. 1989) (finding under Elstad that a case involving "no passage of time to speak of between an unwarned confession and a subsequent warning and confession" were "part and parcel of a continuous process" that amounted to sufficient taint to render the second warned confession inadmissible).

In a sequential confession case, the court must thus determine whether, in the circumstances the *Miranda* warnings were given, the warning could reasonably be found to be effective: that is, "[c]ould the warnings effectively advise the suspect that he had a real choice about giving an admissible statement at that juncture? Could they reasonably convey that he could choose to stop talking even if he had talked earlier?" *Seibert,* 542 U.S. at —, 124 S. Ct. at 2610 (plurality opinion). If not, "the subsequent statement is inadmissible for want of adequate *Miranda* warnings, because the earlier and later statements are realistically seen as parts of a single, unwarned sequence of questioning." *Id.* Accordingly, "when *Miranda* warnings are inserted in the midst of coordinated and continuing interrogation, they are likely to mislead and 'depriv[e] a defendant of knowledge essential to his ability to understand the nature of his rights and the consequences of abandoning them.'" *Id.* (quoting *Moran v. Burbine*, 475 U.S. 412, 424, (1986)). It is "unrealistic to treat two spates of integrated and proximately conducted questioning as independent interrogations subject to independent evaluation simply because *Miranda* warnings formally punctuate them in the middle." *Id.* at 2611. *See also Elstad*, 470 U.S. at 309-10 (noting that in deciding whether a defendant's second confession is the product of a coerced first confession, courts should look at circumstances that show a break in the

causal link between the initial and subsequent confessions—including passage of time, change in venue, change in interrogators and use of *Miranda*).

The facts here show the sort of continuous process that requires suppression of the post-*Miranda* statement. Defendant Hansen was clearly in custody and subject to presumptively coercive questioning before he was Mirandized. There has been no showing that Hansen's statements in response to the initial questioning were voluntary or that the failure to advise Hansen of his rights was a mere technical violation. The evidence shows an ongoing conversation between Sergeant Boje and Hansen. Although most of Hansen's statements are inaudible, Sergeant Boje's comments and questions would provoke incriminating statements. There is no apparent reason for the delay in advising defendant Hansen of his rights. The issue of the voluntariness of Hansen's post-*Miranda* statement cannot be separated from the initial *Miranda* violation.

Hansen's subsequent confession is causally linked to the first confession. The second set of questions related to and amplified the information obtained in the initial statement. The subject matter of the two interrogations overlap, with the second questions eliciting information that was more complete and detailed than the first. No event serves to break the continuity of the initial questioning, so as to lead a reasonable person to believe that he had any genuine choice not to answer.

Hansen's waiver of *Miranda* rights was obtained in a coercive setting—Hansen was handcuffed and had been detained for almost two hours. The first and second interrogations took place in the same location, within the confines of the patrol car, and involved the same interrogator. Because Sergeant Boje continued to converse with Hansen throughout the extended period of the stop, there was no significant passage of

time between the first and second set of questions.  The pre-*Miranda* and post-*Miranda* conversations were treated by both parties as part of a continuous discussion.  The court finds the government has not sustained its burden of showing that Hansen's waiver of *Miranda* rights was the voluntary, knowing and intelligent waiver of a known right.

Accordingly, the court finds that the Magistrate erred in concluding that Hansen's motion to suppress his post-*Miranda* statements should be denied.  However, the Magistrate's R&R will be adopted in all other respects.

IT IS ORDERED:

1. Defendant Hansen's objection (Filing No. 28) to the Report and Recommendation of the Magistrate (Filing No. 27) is sustained.

2. The Report and Recommendation of the Magistrate (Filing No. 27) is adopted in part.

3. Defendant Hansen's motion to suppress (Filing No. 20) is granted in part and denied in part.

4. Defendant Hansen's motion to suppress is granted with respect to statements he made to Sergeant Boje on November 20, 2004, and denied with respect to evidence seized in a search of his vehicle on November 20, 2004.

DATED this 18th day of October, 2005.

BY THE COURT:

s/Joseph F. Bataillon
JOSEPH F. BATAILLON
UNITED STATES DISTRICT JUDGE